UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
KHALID WISDOM,

                         Plaintiff,                            **REPORT AND**
                                                       **RECOMMENDATION**
        -against-                           CV 16-1728 (DRH)(AYS)

THE COUNTY OF NASSAU, DET. CHARLES
PENTOLA, DET. RAYMOND BUTTERWORTH,
P.O. VICTOR GLADITZ, P.O. KERRI ANN
HOOVERT, P.O. JORGE DIAZ, SGT. VINCENT
PAPA, P.O. CHARLES VOLPE, P.O. TANYA
TUCKER, P.O. JOHN MONELL, SGT. KENNETH
CATALANI, DET. ROY MCCOMB, DET. G.
UMBARILA, P.O. ERIK DIAZ, LT. ADAM
SCHEINER, AND "JOHN/JANE DOES 1-10"
(NAMES BEING FICTITIOUS AND PRESENTLY
UNKNOWN)

                         Defendants.
----------------------------------------------------------------X
**ANNE Y. SHIELDS, United States Magistrate Judge:**

        Before the Court, on referral from the Honorable Denis R. Hurley for Report and

Recommendation, are the parties' cross-motions for summary judgment, pursuant to Federal

Rule of Civil Procedure 56.  While Defendants move for summary judgment of this action in its

entirety, Plaintiff seeks partial summary judgment with respect to only one claim.  For the

following reasons, this Court respectfully recommends that Defendants' motion be granted in

part and denied in part and that Plaintiff's motion be denied.

BACKGROUND

        The relevant facts, as set forth below, are taken from the Local Civil Rule 56.1 statements

of undisputed material facts submitted by the parties, as well as the documents offered by both

parties in support of their respective motions.  The Court notes that while the parties complied

with the Local Civil Rules by filing 56.1 Statements, the submissions were not particularly

1

helpful to the Court in that they are rife with argument and assertions when they should simply set forth the undisputed facts of this action. In fact, out of forty-three numbered statements of fact offered by Defendants, there are only seventeen of which Plaintiff does not dispute in one way or another. The parties' respective arguments should have been set forth in their memoranda of law, not their 56.1 Statements.

Moreover, although Plaintiff is also moving for partial summary judgment, he only filed a Rule 56.1 counter-statement in response to Defendants' Rule 56.1 Statement. Plaintiff has failed to file his own Rule 56.1 Statement in support of his motion, to which Defendants could have offered a counter-statement. In any event, the Court's recitation of the facts relevant to these motions follow.

On September 13, 2013, at approximately 11:16 a.m., three employees of the Tri-State Motors automobile dealership at 790 Hempstead Turnpike in Elmont, New York, were robbed at gunpoint by two armed robbers. (Def. Loc. Civ. R. 56.1 Statement ("Def. 56.1") ¶ 1.) The robbers took the employees' watches, cellular telephones, jewelry, a wallet and cash. (Id.) The robbers, who were described as black males, fled from the scene in a dark-colored Range Rover. (Id. ¶ 2; Pl. Loc. Civ. R. 56.1 Counterstatement ("Pl. 56.1") ¶ 2.) The robbery victims called 911, and the Nassau County Police Department's Communications Bureau broadcast a call regarding the robbery at 11:22 a.m. (Id.)

Defendant Police Officers Victor Gladitz ("Gladitz") and Kerri Ann Hoovert ("Hoovert"), on duty at the time in their patrol car, saw the Range Rover travel westbound on Hempstead Turnpike and make a left turn onto Hunnewell Avenue. (Def. 56.1 ¶ 3.) Gladitz and Hoovert pursued the vehicle with their emergency lights and siren activated. Hoovert radioed that they were in pursuit. (Def. 56.1 ¶¶ 3,5; Pl. 56.1 ¶ 5.)

2

At 184 Hunnewell Avenue, the Range Rover slowed down and a male, later identified as David Hosannah ("Hosannah"), exited the vehicle and fled on foot into the backyards of the residential area, holding his waistband as he ran.  (Def. 56.1 ¶¶ 6-7; Pl. 56.1 ¶¶ 6-7.)  Other officers, including Defendants Sergeant Vincent Papa ("Papa"), found Hosannah hiding in bushes in the back of a private house at 250 Hunnewell Avenue.  (Def. 56.1 ¶ 8; Pl. 56.1 ¶ 8.)  The officers also found sunglasses, a handgun – which matched the description given by the victims of the gun used in the robbery – a wallet, a driver's license, and a blank check of Tri-Star Motors in the vicinity of where Hosannah was located.  (Def. 56.1 ¶¶ 8, 33-34; Pl. 56.1 ¶¶ 8, 33-34.)  Hosannah was arrested.  (Def. 56.1 ¶ 31; Pl. 56.1 ¶ 31.)

The Range Rover continued with Gladitz and Hoovert in pursuit.  (Def. 56.1 ¶ 10; Pl. 56.1 ¶ 10.)  At Scimitar and Evans Avenues, the Range Rover struck a curb and came to a stop. (Id.)  While there is much dispute about what happened next, ultimately two males, Horatio Forrest ("Forrest") and Rubens Petion ("Petion"), were removed from the vehicle, handcuffed and arrested.  (Def. 56.1 ¶¶ 12.)  A show-up was conducted at the scene of apprehension and employees of Tri-State Motors identified Forrest and Hosannah as the individuals who robbed them inside the dealership.  (Def. 56.1 ¶ 29; Pl. 56.1 ¶ 29.)  The Range Rover was searched on consent of Petion and three cellular telephones, watches, jewelry, and money taken from the robbery victims were recovered.  (Def. 56.1 ¶ 38; Pl. 56.1 ¶ 38.)

Plaintiff's alleged involvement in the underlying robbery is vehemently disputed by the parties.  According to Defendants, as Gladitz approached the Range Rover after it came to a stop, he observed Plaintiff sitting in the back seat, looking straight ahead, not moving.  (Def. 56.1 ¶ 13.)  Gladitz then watched as Plaintiff slowly opened the door to the Range Rover, exited the vehicle and walked away.  (Id.)  Gladitz did not go after Plaintiff because he had suspects on the

ground and was concerned for his and Hoovert's safety.  (Id. ¶ 14.)  Hoovert did not observe Plaintiff, or anyone else, in the car.  (Id. ¶ 16.)

Gladitz transmitted a description of Plaintiff over the police radio, stating that he was wearing a maroon and orange shirt.  (Id. ¶¶ 17-18.)  Defendant Police Offiers Jorge Diaz ("Diaz") and John Monell ("Monell") then arrived at the scene and Gladitz advised them that there was another black male that exited the vehicle and fled.  (Id. ¶¶ 20-21.)  Gladitz described the individual as a black male, with tattoos covering his face, wearing camouflaged or green shorts.  (Id. ¶ 21.)

Diaz and Monell went in pursuit of the individual and, at 274 Evans Avenue, a short distance from where the Range Rover came to a stop, observed Plaintiff exiting from the rear of a house and walking down the driveway.  (Id. ¶¶ 23, 27.)  Diaz observed that Plaintiff fit the description provided by Gladitz, drew his weapon and instructed Plaintiff to get down on the ground, whereupon he was handcuffed and taken into custody.  (Id. ¶¶ 24-25, 27.)  At the time of his arrest, Plaintiff was wearing greenish, camouflage shorts with orange underwear sticking out above the shorts, and had tattoos covering his face and body.  (Id. ¶ 26.)  Diaz brought Plaintiff back to Gladitz, who confirmed that Plaintiff was the individual he observed in the Range Rover. (Id. ¶ 28.)

For his part, Plaintiff asserts that he was in the vicinity of Tri-State Motors on September 13, 2013 in order to visit Solid Gold Tattoo Shop to obtain a tattoo.  (Wisdom Dep. 36-37, annexed to Harvis Decl. at Ex. 3.)  Upon arriving at the tattoo parlor at approximately 10:45 a.m., Plaintiff found it was closed, so he decided to walk around in search of food and return to the tattoo shop later.  (Id. 39-40.)

When he turned onto Evans Avenue, Plaintiff saw Diaz approach him with his weapon drawn, instructing Plaintiff to put his hands up. (Id. 40.)  Plaintiff put his hands up in the air, Diaz placed handcuffs on him from behind and, according to Plaintiff, Diaz slammed him to the ground. (Id.)  Another officer then arrived and placed shackles around Plaintiff's feet. (Id.)  Diaz held Plaintiff down by placing his knee in Plaintiff's back and his hand on Plaintiff's face, with Plaintiff's face in the grass. (Id.)  Plaintiff asserts that he was kept this way for approximately twenty to thirty minutes. (Id.)

Plaintiff was then placed in a police vehicle and driven around the corner, whereupon Diaz exited the vehicle and Plaintiff was left inside for three hours. (Id. 41.)  During the three hours, a show-up was conducted where Plaintiff was removed from the vehicle and another individual was viewing him from inside of another vehicle approximately one block away. (Id. 41-42.)  Plaintiff was then transported to the police precinct. (Id. 42.)

Plaintiff was arrested and charged with three counts of robbery in the first degree and criminal possession of a weapon in the third degree. (Def. 56.1 ¶ 40; Pl. 56.1 ¶ 40.)  Following a bench trial, Plaintiff was acquitted of all charges on January 12, 2015. (Def. 56.1 ¶ 41; Pl. 56.1 ¶ 41.)

Plaintiff commenced the within action on April 8, 2016, asserting causes of action for false arrest and imprisonment, and malicious prosecution, pursuant to 42 U.S.C. § 1983 ("Section 1983") and New York state law.  Plaintiff also asserts Section 1983 claims for excessive force, failure to intervene, unreasonably prolonged detention, violation of due process, and municipal liability.  Finally, Plaintiff brings state law claims for assault, battery, intentional infliction of emotional distress, negligent training, and violation of Article I, Sections 6 and 12 of the New York State Constitution.  Defendants now move for summary judgment with respect to

all claims alleged by Plaintiff.  Plaintiff opposes Defendants' motion and cross-moves for partial summary judgment.

DISCUSSION

I.     <u>Legal Standard</u>

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The burden is on the moving party to establish the lack of any factual issues.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  The very language of this standard dictates that an otherwise properly supported motion for summary judgment will not be defeated because of the mere existence of some alleged factual dispute between the parties.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986).  Rather, the requirement is that there be no "genuine issue of material fact."  <u>Id.</u> at 248.

The inferences to be drawn from the underlying facts are to be viewed in the light most favorable to the non-moving party.  <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 588 (1986).  When the moving party has carried its burden, the party opposing summary judgment must do more than simply show that "there is some metaphysical doubt as to the material facts."  <u>Id.</u> at 586.  In addition, the party opposing the motion "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing there is a genuine issue for trial."  <u>Anderson</u>, 477 U.S. at 248.

When considering a motion for summary judgment, the district court "must also be 'mindful of the underlying standards and burdens of proof' . . . because the evidentiary burdens that the respective parties will bear at trial guide the district courts in their determination of summary judgment motions."  <u>SEC v. Meltzer</u>, 440 F. Supp. 2d 179, 187 (E.D.N.Y. 2006)

(quoting <u>Brady v. Town of Colchester</u>, 863 F.2d 205, 211 (2d Cir. 1988)) (internal citations

omitted).  "Where the non-moving party would bear the ultimate burden of proof on an issue at

trial, the burden on the moving party is satisfied if he can point to an absence of evidence to

support an essential element of the non-movant's claim."  <u>Meltzer</u>, 440 F. Supp. 2d at 187.

II.    <u>Qualified Immunity</u>

"Qualified immunity is an affirmative defense that shields government officials from

liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known."  <u>Bartels v. Guariglia</u>, No.

16-CV-1848, 2019 WL 2076809, at *8 (E.D.N.Y. May 10, 2019) (quoting <u>Stephenson v. Doe</u>,

332 F.3d 68, 76 (2d Cir. 2003)) (internal quotation marks and citation omitted).  A constitutional

right is "clearly established" where "existing law . . . place[s] the constitutionality of the

[official's] conduct 'beyond debate.'"  <u>District of Columbia v. Wesby</u>, __ U.S. __, 138 S. Ct.

577, 589 (2018) (quoting <u>Ashcroft v. al-Kidd</u>, 536 U.S. 731, 741 (2011)).  "To that end, the

Supreme Court has described qualified immunity as a 'demanding' doctrine protecting 'all but

the plainly incompetent or those who knowingly violate the law.'"  <u>Bartels</u>, 2019 WL 2076809,

at *8 (quoting <u>Wesby</u>, 138 S. Ct. at 589) (additional citation omitted).

In determining whether a defendant is entitled to qualified immunity, courts conduct a

two-step analysis: (1) do the facts demonstrate that the defendant's conduct violated plaintiff's

constitutional rights; and, (2) if there was a constitutional violation, was the right clearly

established at the time of the defendant's actions.  <u>See</u> <u>Bartels</u>, 2019 WL 2076809, at *9 (citing

<u>Barboza v. D'Agata</u>, 676 F. App'x 9, 12 (2d Cir. 2017)).  A court may, however, "in its own

discretion, refrain from determining whether a constitutional right has been violated and move

directly to the question of qualified immunity (<u>i.e.</u>, whether a constitutional right was clearly

established at the time the defendant acted)." Costello v. City of Burlington, 632 F.3d 41, 51-52 (2d Cir. 2011) (Pooler, J., concurring) (citing Pearson v. Callahan, 555 U.S. 223 (2009)).

The Individual Defendants assert that they are entitled to qualified immunity from Plaintiff's claims of false arrest and malicious prosecution because, based on the facts known to them at that time, it was objectively reasonable for them to conclude that probable cause, or at least arguable probable cause, existed to arrest Plaintiff. (Def. Mem. of Law in Supp. of Mot. for Summ. J. 18.) In response, Plaintiff argues that a qualified immunity defense is premature at this juncture because there are factual issues requiring resolution by the factfinder before any determination of qualified immunity can be made, (Pl. Mem. of Law in Opp'n 16-18), and that the facts offered by Plaintiff in support of his claims, if credited by a jury, would demonstrate that Defendants intentionally deprived him of his constitutional rights. (Id. 18.)

"Qualified immunity is an affirmative defense that must be pled and proved by the defendant." Shechter v. Comptroller of the City of N.Y., 79 F.3d 265, 270 (2d Cir. 1996) (citing Blissett v. Coughlin, 66 F.3d 531, 538 (2d Cir. 1995)). The mere fact that the Individual Defendants are "government officials" is not enough to establish qualified immunity. Shechter, 79 F.3d at 270. The Individual Defendants "must further demonstrate the specific acts at issue were performed within the scope of their official duties." Id. (emphasis omitted).

Moreover, while "[t]he matter of whether a right was clearly established at the pertinent time is a question of law[,] . . . the matter of whether a defendant official's conduct was objectively reasonable, i.e., whether a reasonable official would reasonably believe his conduct did not violate a clearly established right, is a mixed question of law and fact." Higazy v. Templeton, 505 F.3d 161, 170 (2d Cir. 2007) (quoting Kerman v. City of New York, 374 F.3d 93, 108-09 (2d Cir. 2004)). Accordingly, although "'[i]mmunity ordinarily should be decided by

the court," that is true only in those cases where the facts concerning the availability of the defense are undisputed; otherwise, jury consideration is normally required."  Higazy, 505 F.3d at 170 (quoting Oliveira v. Mayer, 23 F.3d 642, 649 (2d Cir. 1994)) (additional citation omitted).

In this action, the Court agrees with Plaintiff.  Given the glaringly different versions of events offered by the parties, at this stage of the action, "the facts do not support a finding, as a matter of law, that [the Individual] Defendants' actions were 'objectively reasonable' with respect to Plaintiff's . . . claims."  Szabo v. Parascandolo, No. 16-CV-3683, 2019 WL 481925, at *7 (E.D.N.Y. Feb. 6, 2019).  Rather, several factual issues must be resolved prior to a determination with respect to qualified immunity.  As such, this Court finds that the Individual Defendants are not entitled to qualified immunity at this stage of the litigation and recommends that Defendants' motion for summary judgment on that ground be denied.

III.   Defendants' Motion for Summary Judgment as to Plaintiff's Claims

A.   False Arrest

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause . . . is substantially the same as a claim for false arrest under New York law."  Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted); Folk v. City of New York, 243 F. Supp. 3d 363, 371 (E.D.N.Y. 2017) (quoting Weyant, 101 F.3d at 852).  Under New York law, a plaintiff alleging false arrest must demonstrate: (1) "the defendant intended to confine" the plaintiff; (2) "the plaintiff was conscious of the confinement;" (3) "the plaintiff did not consent to the confinement;" and, (4) "the confinement was not otherwise privileged."  Broughton v. State, 37 N.Y.2d 451, 456 (1975); see also Folk, 243 F. Supp. 3d at 371 (same).  An arrest is privileged if it was "based on probable cause."  Savino v. City of New York, 331 F.3d 63, 76 (2d Cir. 2003)

(quoting Broughton, 373 N.Y.2d at 458).  Accordingly, "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, . . . whether that action is brought under state law or under § 1983."  Weyant, 101 F.3d at 852 (citations and quotation marks omitted); see also Jenkins v. City of New York, 478 F.3d 76, 84 (2d Cir. 2007) (same).

"In general, probable cause to arrest exists when officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  Weyant, 101 F.3d at 852 (citing cases).  "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."  Devenpeck v. Alford, 543 U.S. 146, 152 (2004) (citing Maryland v. Pringle, 540 U.S. 366, 371 (2003)).  The arresting officer "need only possess enough information to convince a reasonable person that the arrestee committed an offense, . . . and if he does, then he is immune from a subsequent claim of false arrest."  Brown v. City of New York, 201 F. Supp. 3d 328, 331 (E.D.N.Y. 2016) (citations omitted).

"In a lawsuit claiming false arrest, '[t]he burden of establishing the absence of probable cause rests on the plaintiff.'"  Lin v. City of New York, No. 14 Civ. 9994, 2016 WL 7439362, at *7 (S.D.N.Y. Dec. 21, 2016) (quoting Berry v. Marchinkowski, 137 F. Supp. 3d 495, 524 (S.D.N.Y. 2015)).  On summary judgment, the existence of probable cause may be determined as a matter of law "if there is no dispute as to the pertinent events and the knowledge of the officers."  Weyant, 101 F.3d at 852.  Where, however, the parties dispute material facts bearing on such events and knowledge, summary judgment is not appropriate.  See id.; see also Moore v. Comesanas, 32 F.3d 670, 673 (2d Cir. 1994) (finding that where question of whether arresting

10

officer had probable cause was "predominantly factual in nature, [it] was properly presented to the jury").

Here, the entirety of the circumstances surrounding Plaintiff's arrest are in dispute. Gladitz testified at his deposition that he observed Plaintiff in the backseat of the Range Rover when it came to a stop; however, Hoovert, who approached the vehicle at the same time, did not observe anyone else, let alone Plaintiff, in the automobile. Defendants assert that Gladitz radioed a description of a black male wearing an orange or maroon shirt fleeing the Range Rover. However, Plaintiff offers evidence that no radio transmissions concerning Plaintiff went out until after Plaintiff was arrested. (Harvis Decl., Ex. 16.) Moreover, while it appears undisputed that any radio transmission failed to include that the suspect in pursuit had tattoos covering his face, Defendants maintain that Gladitz advised Diaz of this fact when he arrived on the scene.

The foregoing demonstrates that there are genuine issues of material fact as to whether or not Defendants had probable cause to arrest Plaintiff. A determination of this issue will hinge on credibility, which requires a determination by a factfinder. "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005). Accordingly, this Court holds that Plaintiff's false arrest claim is not appropriate for summary judgment and respectfully recommends that Defendants' motion with respect to this ground be denied.

B.    Malicious Prosecution

"To establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff, (2) termination

11

of the proceeding in plaintiff's favor, (3) lack of probable cause for commencing the proceeding, and (4) actual malice as a motivation for defendant's actions." Sherman v. City of New York, No. 18-5359, 2019 WL 2164081, at *9 (E.D.N.Y. May 16, 2019) (quoting Manganiello v. City of New York, 612 F.3d 149, 161 (2d Cir. 2010)) (additional citation and internal quotation marks omitted). "To prevail on a § 1983 claim for malicious prosecution, the plaintiff must also establish 'a post-arraignment seizure.'" Sherman, 2019 WL 2164081, at *9 (quoting Swartz v. Insogna, 704 F.3d 105, 112 (2d Cir. 2013)).

Here, it is undisputed that criminal proceedings were initiated against Plaintiff and that those proceedings terminated in Plaintiff's favor when he was acquitted after a bench trial. However, the same factual issues surrounding whether there was probable cause for Plaintiff's arrest apply to his malicious prosecution claim. Accordingly, for the reasons set forth above in connection with Plaintiff's false arrest claim, this Court finds summary judgment on Plaintiff's malicious prosecution claim similarly inappropriate and recommends that Defendants' motion on this claim be denied.

C.    Excessive Force

Excessive force claims brought pursuant to Section 1983 are "judged under the Fourth Amendment's 'objective reasonableness' standard." Terranova v. New York, 676 F.3d 305, 308 (2d Cir. 2012) (quoting Brosseau v. Haugen, 543 U.S. 194, 197 (2004)). Under this standard, the determinative question is whether the officers' actions are "'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Spinelli v. City of New York, 579 F.3d 160, 167 (2d Cir. 2009) (citation omitted).

"Under the law, police are not permitted to use any degree of force in all instances – in some circumstances, no use of force is reasonable because none is required." Weather v. City of Mount Vernon, No. 08 Civ. 192, 2011 WL 1046165, at *9 (S.D.N.Y. Mar. 22, 2011), aff'd, 474 F. App'x 821 (2d Cir. 2012).  It is "well established that law enforcement officers violate the Fourth Amendment if the amount of force they use is 'objectively unreasonable' in light of the facts and circumstances confronting them." Rogoz v. City of Hartford, 796 F.3d 236, 246 (2d Cir. 2015) (citation omitted).  However, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. (quoting Graham v. Connor, 490 U.S. 386, 396-97 (1989)).  "The 'reasonableness' of the amount of force used thus 'must be judged from the perspective of a reasonable officer on the scene . . . at the moment' the force is used." Rogoz, 796 F.3d at 246-47 (quoting Graham, 490 U.S. at 396).  "In sum, the 'standard' to be applied in determining whether 'the amount of force' used exceeded the amount that was 'necessary' in the particular circumstances is 'reasonableness at the moment.'" Rogoz, 796 F.3d at 247 (quoting Graham, 490 U.S. at 396, 397).  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment." Graham, 490 U.S. at 396 (citation omitted).

Defendants move for summary judgment on the grounds that there is no evidence that any of the Individual Defendants used excessive force against Plaintiff.  According to Defendants, "the only physical force involving Plaintiff occurred when he was placed into custody by Diaz and Monell when they directed him to lie prone on the ground, and when they placed him in handcuffs." (Def. Mem. of Law in Supp. of Mot. for Summ. J. 21.)  Defendants

also point to the fact that Plaintiff never complained of any injuries when he was brought to the police department for processing after his arrest.  (Def. Mem. of Law in Opp'n to Pl. Mot. for Partial Summ. J. 14; Reissman Reply Decl., Ex. W.)  Plaintiff, however, testified at his deposition as follows:

> [An officer] told me to put my hands up and I put my hands behind my back.  He grabbed me and I remember him tripping me and slamming my face down on the grass.  That's when he got on top of me, he put his arm on my face.  My face is on the grass, his hand is on my face, pushing down with his knee in my back.  That's when Monell came and threw the cuffs on my foot.  That's when I asked what am I being arrested for and he said, shut the fuck up, and that's when he kicked me.

(Wisdom Dep. 76, annexed to Harvis Decl. at Ex. 3.)

While Plaintiff's only evidence in support of his excessive force claim is his own testimony, the Second Circuit recently held that a Plaintiff's own testimony, without any other corroborating evidence, is enough to survive summary judgment where such testimony is not "'contradictory and incomplete'" or "'so replete with inconsistencies and improbabilities that no reasonable juror' could credit it."  Adamson v. Miller, No. 18-3443, 2020 WL 1813545, at *2 (2d Cir. Apr. 9, 2020) (quoting Bellamy v. City of New York, 914 F.3d 727, 746 (2d Cir. 2019)).  Although Plaintiff may face a tough hurdle at trial in proving his excessive force claim, particularly in light of Defendants' evidence to the contrary, at this point, the evidence presented is enough to create a genuine issue of material fact to survive summary judgment, in light of the Second Circuit's recent jurisprudence.  Accordingly, this Court respectfully recommends that Defendants' motion for summary judgment be denied with respect to Plaintiff's excessive force claim.

D.    Failure to Intervene

The Second Circuit has recognized that "all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by

other law enforcement officers in their presence." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994) (citing cases). Liability for failure to intercede will attach where the officer in question observes or has reason to know of the underlying wrongful conduct and had a "realistic opportunity to intervene to prevent the harm from occurring" but failed to do so. Id. (citing O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988)). However, where a law enforcement officer is a "direct participant" in the allegedly unlawful conduct, "the failure to intervene theory of liability is inapplicable." Buchy v. City of White Plains, No. 14 CV 1806, 2015 WL 8207492, at *3 (S.D.N.Y. Dec. 7, 2015) (citation and quotation marks omitted).

Here, Defendants argue that since Plaintiff alleges that all of the Individual Defendants directly participated in the alleged violations of his constitutional rights, his failure to intervene claim cannot stand. Plaintiff offers little to refute this argument other than to state that "if a jury credits plaintiff's version of events and finds that the police lacked knowledge of facts sufficient to establish arguable probable cause, several of the officers can be liable on a failure to intervene theory." (Pl. Mem. of Law in Opp'n 26.) Such conclusory allegations are insufficient to survive summary judgment. Plaintiff fails to identify which of the Individual Defendants may be liable under a direct participation theory and which may be liable under a failure to intervene theory. Rather, all of his evidence and arguments are directed at all of the Individual Defendants as a whole, asserting that each directly violated his constitutional rights. As such, his failure to intervene claim fails as a matter of law.

Based on the foregoing, this Court respectfully recommends that Defendants' motion for summary judgment be granted with respect to Plaintiff's failure to intervene claim, and that this claim be dismissed.

E.     Unreasonably Prolonged Detention

A claim for unreasonably prolonged detention is evaluated under the Fourth Amendment.  See Russo v. City of Bridgeport, 479 F.3d 196, 205 (2d Cir. 2007).  In order to prevail on such a claim, a plaintiff must demonstrate "(1) that he has a right to be free from continued detention stemming from law enforcement officials' mishandling or suppression of exculpatory evidence, (2) that the actions of the officers violated that right, and (3) that the officers' conduct 'shocks the conscience.'"  Id. (quoting County of Sacramento v. Lewis, 523 U.S. 833, 846 (1988)).

Plaintiff alleges that as a result of Defendants' failure to turn over certain exculpatory evidence, Plaintiff's right to be free from continued detention under the Fourth Amendment was violated in that he was detained after it was or should have been known that Plaintiff was entitled to be released.  (Compl. ¶¶ 109-13.)  Plaintiff contends that Defendants deliberately failed to disclose to prosecutors or his criminal attorney that Hoovert did not see Plaintiff in the Range Rover on the day of his arrest, arguing that such information was exculpatory.  Defendants argue that such information does not qualify as exculpatory material because Hoovert testified at her deposition that she was occupied handcuffing Forrest at the time Gladitz allegedly saw Plaintiff in the vehicle.  Accordingly, Defendants claim that they had no duty to disclose such information.

Exculpatory evidence has been defined by the Supreme Court as "evidence favorable to [the] accused" and "material either to guilt or to punishment."  Brady v. Maryland, 373 U.S. 83, 87 (1963).  While Defendants argue that the fact that Hoovert did not see Plaintiff in the Range Rover on the date of his arrest is not exculpatory, the Court concludes otherwise.  Gladitz was

16

the only individual who claimed to observe Plaintiff in the Range Rover.  The fact that Hoovert did not see Plaintiff is evidence favorable to Plaintiff, regardless of the reason why Hoovert may or may not have seen him.  Moreover, it is undisputed here that Plaintiff was ultimately acquitted of the criminal charges against him, after being detained for sixteen months.  Accordingly, this Court finds that there are genuine issues of fact with respect to Plaintiff's claim for unreasonably prolonged detention that preclude summary judgment.  It is not beyond the pale for a juror to find that Defendants intentionally withheld the fact that Hoovert did not observe Plaintiff in the vehicle.  For these reasons, the Court respectfully recommends that Defendants' motion for summary judgment be denied with respect to this claim.

      F.     <u>Municipal Liability</u>

Pursuant to the Supreme Court's decision in <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658 (1978), "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  <u>Id.</u> at 694.  Rather, a municipal entity may only be held liable where injury results from the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."  <u>Id.</u>

A municipality may not be held liable under Section 1983 under a <u>respondeat superior</u> theory.  <u>See</u> <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 478 (1986).  Therefore, "to prevail on a claim against a municipality under Section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury."  <u>Roe v. City of Waterbury</u>, 542 F.3d 31, 36 (2d Cir. 2008) (citing <u>Monell</u>, 436 U.S. at 690-91).  "The plaintiff must show a 'direct causal link between a

municipal policy or custom, and the alleged constitutional deprivation.'" <u>Mazzone v. Town of Southampton</u>, 283 F. Supp. 3d 38, 61 (E.D.N.Y. 2017) (quoting <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989)).

"In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.'" <u>Davis v. City of New York</u>, 228 F. Supp. 2d 327, 336 (S.D.N.Y. 2002). "Although there is no heightened pleading requirement for complaints alleging municipal liability under § 1983, a complaint does not suffice if it tenders naked assertion[s] devoid of further factual enhancement." <u>McLennon v. City of New York</u>, 171 F. Supp. 3d 69, 94 (E.D.N.Y. 2016) (quoting <u>Green v. City of Mount Vernon</u>, 96 F. Supp. 3d 263, 301-02 (S.D.N.Y. 2015)) (additional citation and internal quotation marks omitted) (alteration in original). "[T]he mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." <u>Zahra v. Town of Southold</u>, 48 F.3d 674, 685 (2d Cir. 1995) (internal citation and quotation marks omitted).

To demonstrate a policy, custom, or practice for purposes of municipal liability, "a plaintiff need not identify an expressly adopted rule." <u>Mazzone</u>, 283 F. Supp. 3d at 61. Rather, a plaintiff may establish the existence of a municipal policy or custom by demonstrating any one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by governmental officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

<u>Jones v. Bay Shore Union Free Sch. Dist.</u>, 170 F. Supp. 3d 420, 438 (E.D.N.Y. 2016),

aff'd, 666 F. App'x 92 (2d Cir. 2016) (quoting Brandon v. City of New York, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)).

Here, the evidence presented fails to substantiate any of the four Monell categories.  There is nothing before the Court that demonstrates a municipal policy, practice or custom of unconstitutional conduct.  In response to Defendants' motion for summary judgment, Plaintiff asserts various theories and situations that he "can show" are likely to occur within the Nassau County Police Department.  (Pl. Mem. of Law in Opp'n 23-24.)  Such theories are not evidence.  At this stage of the litigation, Plaintiff must present actual evidence in support of his claim for municipal liability in order to take it to trial.  See Vail v. City of  New York, 68 F. Supp. 3d 412, 431 (S.D.N.Y. 2014) ("A municipal policy may be pronounced or tacit and reflected in either action or inaction, but either way Plaintiff must allege it with factual specificity, rather than by bare and conclusory statements.").   Plaintiff has failed to meet this burden.

Moreover, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." Jones, 170 F. Supp. 3d at 438 (quoting City of Oklahoma v. Tuttle, 471 U.S. 808, 823-24 (1985)).  The evidence before the Court fails to demonstrate that anyone other than Plaintiff has been subjected to the alleged unconstitutional policy or custom he claims to exist.  Accordingly, this Court finds that Plaintiff's claim for municipal liability fails as a matter of law and, as such, Defendants' motion for summary judgment should be granted and the claim should be dismissed.

G.      Assault and Battery

Under New York law, claims for assault and battery are evaluated under the same "objective reasonableness" standard as excessive force claims.  See Kramer v. City of New York, No. 04 Civ. 106, 2004 WL 2429811, at *11 (S.D.N.Y. Nov. 1, 2004) ("In the context of state officers performing their lawful duties, New York State law regarding assault and battery parallels the federal laws regarding excessive force.").  "Where there has been an unlawful arrest, any degree of force is unreasonable and excessive."  Id. (citation omitted).

For the same reasons set forth above in connection with Plaintiff's excessive force claim, this Court finds that there are genuine issues of fact with respect to Plaintiffs' claims for assault and battery.  Accordingly, the Court respectfully recommends that Defendants' motion for summary judgment on these grounds be denied.

H.      Intentional Infliction of Emotional Distress

"Under New York law, the tort of intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." Restis v. American Coal. Against Nuclear Iran, Inc., 53 F. Supp. 3d 705, 729 (S.D.N.Y. Sept. 30, 2014) (citing Bender v. City of New York, 78 F.3d 787, 790 (2d Cir. 1996)).  "New York sets a high threshold for conduct that is 'extreme and outrageous' enough to constitute intentional infliction of emotional distress." Restis, 53 F. Supp. 3d at 729 (quoting Bender, 78 F.3d at 790; see also Gay v. Carlson, 60 F.3d 83, 89 (2d Cir. 1995) ("We have noted that New York courts have been 'very strict' in applying these elements.").  Indeed, "New York courts have found liability for intentional infliction of emotional distress 'only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

20

decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." <u>Restis</u>, 53 F. Supp. 3d at 729 (quoting <u>Stuto v. Fleishman</u>, 164 F.3d 820, 827 (2d Cir. 1999)) (additional citations omitted).

Here, the evidence before the Court simply does not rise to the level necessary to sustain a claim for intentional infliction of emotional distress. There is nothing upon which the Court can even vaguely find a question of fact regarding any conscience-shocking or outrageous behavior by Defendants. Seemingly aware of this, Plaintiff offers nothing in opposition to Defendants' motion other than a conclusory allegation that the conduct outlined in the parties' papers "raises questions of fact sufficient for plaintiff's emotional distress . . . claim[] to survive." (Pl. Mem. of Law in Opp'n 26-27.) The Court finds this insufficient to overcome Defendants' motion for summary judgment.

Accordingly, this Court respectfully recommends that Defendants' motion for summary judgment with respect to Plaintiff's claim for intentional infliction of emotional distress be granted and that the claim be dismissed.

I. <u>Negligent Training</u>

Plaintiff asserts a claim for "negligent training" against Defendants, asserting that "Defendants failed to use reasonable care in the training of NCPD employees who participated in the [alleged] unlawful conduct." (Compl. ¶¶ 149-51.) New York, however, "does not permit a claim for negligent hiring, training, retention or supervision where the defendants act in the scope of their employment." <u>I.M. v. United States</u>, 362 F. Supp. 3d 161, 207 (S.D.N.Y. 2019) (quoting <u>Schoolcraft v. City of New York</u>, 103 F. Supp. 3d 465, 522 (S.D.N.Y. 2015)).

Here, all of the Individual Defendants are alleged to have been acting within the scope of their employment during the underlying events giving rise to this action, a fact which Defendants

– and more specifically, Nassau County (the "County"), as their employer – do not dispute.
"[W]here a defendant employer admits its employees were acting within the scope of their
employment, an employer may not be held liable for negligent hiring, training, and retention as a
matter of law."  Rowley v. City of New York, No. 00 Civ. 1793, 2005 WL 2429514, at *13
(S.D.N.Y. Sept. 30, 2005) (citing cases).

Seeming to again recognize the futility of his claim, Plaintiff conflates his state law
negligent training clam with his federal Monell claim in his opposition to Defendants' motion,
failing to even address Defendants' arguments concerning the invalidity of such claim under
New York law.  Accordingly, the Court finds that there is no genuine issue of material fact with
respect to Plaintiff's state law claim for negligent training, and that the claim fails as a matter of
law.  For this reason, the Court respectfully recommends that Defendants' motion for summary
judgment be granted and that Plaintiff's claim for negligent training be dismissed.

J.      Violation of the New York State Constitution

Plaintiff's Complaint asserts in its Thirteenth Cause of Action that all Defendants
violated his rights under Article I, Sections 6 and 12 of the New York State Constitution.
(Compl. ¶¶ 152-54.)  Defendants seek summary judgment with respect to this claim since they
are duplicative of federal claims already asserted by Plaintiff in this action.  (Def. Mem. of Law
in Supp. 30-31.)  Plaintiff barely offers opposition to this ground of Defendants' motion, again
stating that the conduct outlined in the parties' papers "raises questions of fact sufficient for
plaintiff's . . . violations of the New York State Constitution claim[] to survive."  (Pl. Mem. of
Law in Opp'n 26-27.)

As Defendants correctly point out, there is no private right of action under the New York
State Constitution where a plaintiff has an alternative remedy under other federal and state laws.

See Vilkhu v. City of New York, No. 06-CV-2095, 2008 WL 1991099, at *8 (E.D.N.Y. May 5,

2008) (citing Coakley v. Jaffe, 49 F. Supp. 2d 615, 628-29 (S.D.N.Y. 1999), aff'd, 234 F.3d

1261 (2d Cir. 2000)).  Here, Plaintiff has viable claims for false arrest and excessive force under

Section 1983, rendering his claim for violation of Article I, Section 12 of the New York State

Constitution – which applies to unreasonable searches and seizures – void since "any violation of

plaintiff's right to be free from unreasonable searches or seizures can be vindicated through [his]

viable Fourth Amendment claim."  Vilkhu, 2008 WL 1991099, at *8 (citing Coakley, 49 F.

Supp. 2d at 628-29).

Similarly, Plaintiff's claim for violation of Article I, Section 6 of the New York State

Constitution – which provides for due process with respect to criminal proceedings – also fails

since Plaintiff has a pending due process claim under the Fourteenth Amendment, for which he

seeks partial summary judgment.  Accordingly, this Court finds that Plaintiff's claim for

violation of the New York State Constitution fails as a matter of law and recommends that

Defendants' motion for summary judgment be granted with respect to this claim.

IV.    Plaintiff's Cross-Motion for Summary Judgment

Plaintiff cross-moves for summary judgment on what he deems his Fourteenth

Amendment due process claim for fabrication of evidence and failure to turn over exculpatory

evidence.  While no such separate claim is set forth in Plaintiff's Complaint, such a claim can be

construed from the allegations lodged in support of Plaintiff's claim for unreasonably prolonged

detention.  Accordingly, for the same reasons set forth above in connection with Plaintiff's

unreasonably prolonged detention claim, the Court finds that there are genuine issues of fact

concerning Plaintiff's claim for violation of due process resulting from fabrication of evidence

and failure to turn over exculpatory evidence.

However, the Court notes that to the extent Plaintiff is attempting to argue that Defendants are somehow responsible for exculpatory evidence not being presented to the grand jury that indicted Plaintiff, that part of his claim should be dismissed.  Presenting evidence to a grand jury is the province of the District Attorney's Office, an entity of New York state, not the County or its individual employees.

Accordingly, the Court respectfully recommends that Plaintiff's motion for partial summary judgment be denied.

<u>RECOMMENDATION</u>

For the foregoing reasons, this Court respectfully recommends that Defendants' motion for summary judgment be granted in part and denied in part.  Specifically, the Court recommends that Defendants' motion be granted with respect to Plaintiff's claims for failure to intervene, municipal liability, intentional infliction of emotional distress, negligent training and violation of the New York State Constitution.  In all other respects, the Court recommends that Defendants' motion be denied.  Finally, the Court recommends that Plaintiff's motion for summary judgment be denied.

<u>OBJECTIONS</u>

A copy of this Report and Recommendation is being provided to all counsel via ECF.  Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. <u>Thomas v. Arn</u>,

474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive

right to appeal."); <u>Caidor v. Onondaga Cnty.</u>, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to

object timely to a magistrate's report operates as a waiver of any further judicial review of the

magistrate's decision").


**SO ORDERED:**

Dated: Central Islip, New York
      April 20, 2020                    /s/       Anne. Y. Shields
                                      ANNE Y. SHIELDS
                                        United States Magistrate Judge